Good morning. Richard Rome for the defendant. So in this case, the defendant pled guilty to a RICO conspiracy and ultimately was sentenced to 144 months. The issue that we have in this case is whether the court was correct when it set the offense level at 33 instead of 19. And two 181.1 provides for a racketeering conviction to be 19 unless the underlying racketeering offense would take it over that. And in this case, that's what the judge put it over under 281.5, saying that the underlying offense was a conspiracy to murder. And it's our contention that the evidence to bump it up like that was insufficient and it had a substantial impact on the sentence. The guideline was 168 to 210 months. Otherwise, it would have been 63 to 78 months. The government relied, there was obviously submitted documents and an extensive sentencing hearing. The government relied on several documentation, a plea agreement, some intercepted phone calls, and investigative, some investigative reports, proffers, and some stipulations. Now, for there to be, for that enhancement to apply, there would have to be a finding of a conspiracy for a specific intent crime to commit that, to commit a murder. And it's the contention of the defense that the evidence that was submitted was not sufficient. What's the standard of review that we're looking at this under? Is it a clear error with respect to the factual findings that the judge made as to the underlying offense? I believe it is clear, and there has to be clear and convincing evidence as far as what was before the court when it decided to do that. Now, most of the evidence, really a lot of it was just collateral. For example, if you look at the plea agreement, it's true, look, the guy's not a saint. He was associated with the gang, and there was some, an admission in the plea agreement that he was affiliated with a lot of what you could say racketeering type of activities, but nothing that would, in there that said that he was going to specifically intend to kill anybody. Well, he may not have intended to kill the two individuals, their names, I take it they go by Rascal and Shy Boy, is that right? Those are the two targets. Yeah, those are the two targets. It wasn't, he didn't, there's not evidence that he intended to pull the trigger as to those, but there is direct evidence that he supplied the guns. There's evidence that he knew what the reason for providing these guns would be, that he was in a meeting where specifically, it was specifically discussed that Rascal and Shy Boy needed to be killed. And so, I mean, what more, what more should you have to have? Well, the problem is, and it comes down to the testimony of the one witness who stipulated that testimony was admitted into the sentencing hearing. Right. Because if you look at all of the. The trial of the co-defendant. The trial of the co-defendant.  The party was named out. And apparently there was some offer to have him actually come in, but you said, but the defendant's lawyers said no. I think that's correct. The attorneys agreed that they would just have that testimony. And so, I mean, isn't this case just starting in with the fact that the district judge, who I gather was the district judge at the same district judge at the trial in which the testimony was given, chose to believe him? Well, that's right. But the question is, was the evidence sufficient by clear and convincing evidence? Was it sufficient if he chooses to believe him? Isn't that the end of it? Well, I think that that's not the end of it. That's why we're here, to take a look and see. Well, I'm trying to find out on what basis we or anybody else could say that the district judge had no, couldn't believe him, or shouldn't have believed him. I think because. If you believe him, there's clear and convincing evidence, right? There probably is if you believe him. All right. So, therefore, the only question is the credibility finding. That's right. And that's really what the case turns on, because there were numerous, this witness was impeached by in numerous fashions. First of all, he lied about, by his own admission, about where he got these guns that he allegedly, that were allegedly supplied for what was going to be this hit. He lied about who was driving the vehicle on that particular date. He switched his story. Well, but he lied originally. But once he started cooperating, he was telling consistent stories. Is that right? Well, you know, once he decided that, sure, once he decided that he was going to have a plea agreement and try to get a less sentence, then he switched his story. But I think it might be more relevant as what he said at first instead of what he said later on when he decided. Can you cite any case in which we have found, we've overturned a judge's credibility determination with regard to a cooperator? I can't tell you one offhand as I'm standing here. But there were also, there were other lies. He lied about his gang association. He lied about, he lied at a preliminary hearing. He lied at the probation. He lied about his gang association. We have all of these things that are tied in. And, you know, it's. Don't you have another problem here, which is the way the guidelines operate, if I understand it correctly. It's not even that you've got to have a showing that he specifically intended to kill the rascal and shy boy, but it's somewhat less than that, isn't it? Isn't it that the killing of rascal and shy boy was a reasonably foreseeable consequence of the underlying murder conspiracy? So in other words, it's kind of a Pinkerton kind of standard which lowers, I think, lowers the burden on the government and on the judge with respect to what this evidence must show. I don't know if that's accurate or not. I mean, I can't say that I know the exact answer to that. But my response would be that in any event, that even at a lower standard, that it should be insufficient. And I think I think what happened also that when he I got the sense that when he when they pled to this, they really weren't anticipating. I think just in the way that the sentencing unfolded and it was such a contested sentencing hearing that I think the defendant might have felt that he in a certain way got sandbagged that he had, you know, pled to the Rico. And then all of a sudden you're moving into a whole different area of the sentencing scheme. So. Well, what if you if it wasn't a conspiracy to commit murder? What was the underlying racketeering? Well, I think that I think if you look in the plea agreement, there's it. It does not include murder. I think it included. I thought it did include murder. I thought it was giving him the guns, knowing that they could be used to murder people. Well, that's true. But giving somebody a gun that you did include murder. No, no, that's not murder. Giving somebody a gun that they could be used in something, that's really a conditional situation. And it could be that you're doing it to give it to him to commit a manslaughter. So the fact that somebody could give a. . . Well, a manslaughter isn't a murder. Well, that's what I'm saying. That's why. The plea agreement does not include. . . Just the fact that you're giving somebody a gun that could be used doesn't mean that you're giving it to them to use to commit a murder. It could be done to commit a robbery, for example. Well, what about after the fact, when the guns were taken, he called up Balvers and wanted reimbursement for the guns? Well, again, but I think that it's true that the guns were given. But I don't think that that necessarily talks about that it was going to be used for a murder. Like I say, it could have been used for a robbery or some other type of incident. I'd like to hold. . . They didn't talk about robberies. They talked about killing these two guys. Well, that's true. But, again, we need the specific intent for a homicide, for a murder. And I don't think we have. . . I'd like to reserve my 45 seconds if I could. I'd be glad to answer any other questions. Okay, you may. Okay, thank you. Good morning. Justin Rhodes on behalf of the United States. The questions before this district court are whether Judge Fease clearly erred in finding that there was clear and convincing evidence that defendants' racketeering conduct was consistent with conspiracy to commit murder, and if so, whether the 12-year sentence was appropriate. The evidence before Judge Fease, simply from the plea agreement, he came close to finding that there was a Level 33, but then relied on the testimony of Isaac Alvarez. That testimony was extensive, and it was well vetted by cross-examination at trial, and Judge Fease made specific findings as to Alvarez's credibility. He noted that, yes, Alvarez had lied at the beginning, but then concluded that that lie became the truth at the point that Alvarez began to cooperate with federal authorities, and that from the moment he began to cooperate, his testimony was truthful, and it was corroborated, and it was consistent. In terms of what it was that Judge Fease had to determine that defendants' racketeering conduct fell within the scope of the analog of conspiracy to commit murder, Alvarez said that he and defendant went to go look for Shy Boy and Rascal in November or December. Then there was a meeting with senior gang leadership, at which Alvarez and defendant attended to discuss the murder of Shy Boy and Rascal. When it had to happen, one of the senior gang leaders called Alvarez and told him it's time. Alvarez called defendant and said it had to be done, and defendant agreed. They traveled in a car together. The timing specifically of that day is unclear, but defendant traded in his AR-15 assault rifle for two handguns to increase the number of assailants that were available, and then defendant, Alvarez, another defendant and that other defendant's girlfriend drove to the swap meet, and everyone but the girlfriend got out of the car and went to go look for Shy Boy and Rascal. Alvarez testified about how he was arrested with the two firearms, and then what brings, I think, brings it all back together is that after the event, defendant calls up a senior gang leader and says, I need to get Downer, who was the other gang member involved in the shooting, I need to get his number to get my guns back. And then there's another call from the senior gang leader, Mr. Orozco, to Downer saying, I got a call from Lonely, who's defendant. He's calling around to get his guns back, the ones that were taken from Little Boy, who's also Alvarez. And so what this does is it confirms not only that these events occurred, but then in defendant in his plea agreement, when he says in January of 2010, I lent firearms and then I tried to get them back, that he's talking about this specific incident, that he's talking about lending guns to Isaac Alvarez, who were then, and by the way, he says firearms. So there's two guns. So that means he's already traded in the AR-15. He has the two guns, which is entirely consistent with what Alvarez has testified. The district court did not clearly err in finding that that evidence was sufficient. I'd like to address the reasonableness of the sentence, although that didn't come up in the earlier discussion. Defendant has criminal history six. There was some dispute about whether that was overstated, but nonetheless, he's certainly up there. His criminal history includes, as Judge Feist found, it was serious, it's continuing, and it was escalating. It involved an assault with a deadly weapon, discharge of a firearm, and some other conduct. But, yes, there were mitigating factors, and I think Judge Feist took those into account. He looked at, you know, defendant's fact that he was an associate rather than a member of the gang. He had a young child. He may have been trying to turn his life around. And he used those within the scope of 3553A and departed downward, downward two years. I just don't think there's any evidence in the record that Judge Feist didn't consider that would suggest that that sentence, 144 months, was substitutely unreasonable. Obviously, if the Court finds that it's not a level 33, then that calculus needs to be redone. The level 33, though, you didn't have to find an intent to commit murder. Couldn't you have gotten there the same way by under the relevant conduct? Yes. Analysis. Yes. And there was not a murder conspiracy that this defendant was charged in as to Shy Boy and Rascal. He was charged in the overall racketeering conspiracy, and then, as the Court knows, the guidelines then jump to whatever is the closest conduct. In this case, the conduct involved a conspiracy to commit murder. And that was found by both the pre-sentence report and then, again, Judge Feist relying on a combination of things. And is that sufficient to support the enhancement based on a conspiracy to commit murder under 2E1.1? Is the — Is aiding and abetting, aiding and abetting, is that sufficient? Is aiding and abetting sufficient? The conspiracy to commit murder. Yes, I believe so. Although that — I don't — I think in this case, you know, he was part of the conspiracy. You know, he was at the meetings. He agreed to go with Alvarez. He agreed to provide the guns. Then he got out of the car. He didn't have a firearm, so he was to be a lookout. But that's certainly — he has — he has bought into the conspiracy. He has made the agreement. There are specific victims involved and overreacts. Many overreacts have been taken. So I do believe aiding and abetting would be sufficient, but I would argue that he's — he's a full participant. Unless the Court had further questions, I would submit. Okay. I'll give you a couple minutes for that. Yeah. I really don't have a lot to add unless there's some question, except that the 33-level enhancement I think that the Court was inquiring about under 2A1.5 directly refers to conspiracy or solicitation to commit murder, just in response to your aiding and abetting point. But other than that, I'll stand and submit it unless there's anything further. Does anybody have anything? No. All right. Thank you very much, Counsel. Thank you. United States v. Moran, ABC. Thank you.
judges: Smith, Wardlaw, Berzon